UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NORTHWEST HARDWOODS, INC., )<br>)<br>        Plaintiff, )<br>)<br>    v. )<br>)<br>UNITED STATES, )<br>)<br>        Defendant. )<br>) | Ct. No. 25-00115 |

## COMPLAINT

Plaintiff Northwest Hardwoods, Inc. ("Northwest Hardwoods"), by and through its counsel, alleges as follows:

### I. PROCEEDING UNDER REVIEW

1. This action seeks judicial review of certain aspects of the final results of the fifth administrative review of the antidumping ("AD") order on Certain Hardwood Plywood Products ("hardwood plywood") from the People's Republic of China ("China") conducted by the U.S. Department of Commerce ("Commerce"). See Certain Hardwood Plywood Products From the People's Republic of China: Final Results of Administrative Reviews of the Antidumping and Countervailing Duty Orders, Final Determination of No Shipments; 2021– 2022, 90 Fed. Reg. 21,271 (Dep't of Commerce May 19, 2025) ("Final Results"), and accompanying Issues and Dec. Mem. ("Final I&D Mem."). The review in question covers entries of hardwood plywood during the period of review ("POR") from September 26, 2021 through December 31, 2022.

### II. JURISDICTION AND STANDARD OF REVIEW

2. Northwest Hardwoods brings this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(i)(I), (B)(iii), 19 U.S.C. § 1516a(a)(2)(A)(i)(I), (B)(iii).

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and sections 516A(a)(2)(A)(i)(I), (B)(iii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(I), (B)(iii).

4. The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

### III.  STANDING

5. Northwest Hardwoods is a U.S. importer of hardwood plywood manufactured in Vietnam. Northwest Hardwoods was a party to the proceeding that led to the contested determination through the submission of new factual information on the record and the submission of arguments in Northwest Hardwoods' case brief and rebuttal case brief. Northwest Hardwoods is, therefore, an "interested party" within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3).

6. Accordingly, Northwest Hardwoods has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

### IV.  TIMELINESS OF THIS ACTION

7. On May 19, 2025, Commerce published the Final Results in the Federal Register. See Final Results, 90 Fed. Reg. at 21,271.

8. Northwest Hardwoods filed a summons to initiate this case on June 18, 2025, within 30 days of the publication of the Final Results in the Federal Register. See Summons (June 18, 2025), ECF No. 1. This complaint is being filed within 30 days after the date on which the summons was filed.

9. Northwest Hardwoods' summons and complaint, thus, are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii) and USCIT R. 3(a)(2), 6(a).

## V. STATEMENT OF FACTS

10. On January 4, 2018, Commerce issued the AD and countervailing duty ("CVD") orders on hardwood plywood from China. See Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order, 83 Fed. Reg. 504 (Dep't of Commerce Jan. 4, 2018); Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order, 83 Fed. Reg. 513 (Dep't of Commerce Jan. 4, 2018).

11. Following an allegation from the domestic industry, on June 17, 2020, Commerce initiated scope and country-wide anti-circumvention inquiries, pursuant to 19 C.F.R. § 351.225(c) and (h) and section 781(b) of the Act, 19 U.S.C. § 1677j(b), to determine whether hardwood plywood manufactured from Chinese-origin core veneers, multi-ply core veneer panels, and/or veneer core platforms and assembled in Vietnam was either covered by the scope or should be included within the scope of the AD and CVD orders on hardwood plywood from China. See Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders; Vietnam Assembly, 85 Fed. Reg. 36,530 (Dep't of Commerce June 17, 2020).

12. Commerce initiated its scope and circumvention inquiries on five production scenarios:

(1) face/back veneers and assembled core components (e.g., veneer core platforms) manufactured in China; (2) fully assembled veneer core platforms manufactured in China and face/back veneer produced in Vietnam or third countries; (3) multi-ply panels of glued core veneers manufactured in China and combined in Vietnam to produce veneer core platforms and combined with either face and/or back veneer produced in China, Vietnam, or a third country; (4) face/back veneers and individual core veneers produced in China; and (5) individual core veneers manufactured in China and processed into a veneer core platform in Vietnam and combined with face/back veneer produced in Vietnam or a third country.

<u>Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Scope Determination and Affirmative Preliminary Determination of Circumvention of the Antidumping and Countervailing Duty Orders</u>, 87 Fed. Reg. 45,753, 45,754 (Dep't of Commerce July 29, 2022) ("<u>Prelim. Circ. Determination</u>") and accompanying Prelim. Dec. Mem. at 7 ("Prelim. Circ. Dec. Mem.").

13. On July 29, 2022, Commerce issued its preliminary determination, making either an affirmative scope determination or an affirmative, country-wide circumvention determination on all five production scenarios. See <u>Prelim. Circ. Determination</u>, 87 Fed. Reg. at 45,754; Prelim. Circ. Dec. Mem. at 26-27. Commerce preliminarily determined, based on application of adverse facts available ("AFA"), that 36 companies, including Groll Ply and Cabinetry ("Groll Ply") and Win Faith Trading Limited ("Win Faith"), produced plywood under all five scenarios subject to the inquiries (i.e., shipped hardwood plywood that was assembled in Vietnam using certain Chinese inputs). <u>See</u> Prelim. Circ. Dec. Mem. at 26-27.

14. As part of its preliminary circumvention determination, Commerce established a certification regime for exporters and importers of hardwood plywood allowing such companies to certify that their exports/imports are not subject to the scope of the AD and CVD orders on hardwood plywood from China because they were completed in Vietnam using non-Chinese origin hardwood plywood inputs. See <u>Prelim. Circ. Determination</u>, 87 Fed. Reg. at 45,754-55; Prelim. Circ. Dec. Mem. at 27. Commerce's certification regime did not allow the 36 companies for which

4

Commerce had applied AFA (the "blacklist companies") to certify that their entries were not produced using any of the Chinese hardwood plywood input scenarios subject to Commerce's circumvention inquiry and required cash deposits at the applicable rates. See Prelim. Circ. Determination, 87 Fed. Reg. at 45,755; Prelim. Circ. Dec. Mem. at 13. Commerce stated that it would "reconsider the eligibility of the 36 companies in question to participate in the certification process if they demonstrate in a future segment of the proceedings (e.g., a changed circumstances review or administrative review) that the hardwood plywood they produce in and/or export from Vietnam was not produced under any of the {five production scenarios}." Prelim. Circ. Dec. Mem. at 27-28.

15. In its final circumvention determination, Commerce revised its scope determination to find that the first three production scenarios are not covered by the scope of the AD and CVD orders on hardwood plywood from China. See Certain Hardwood Plywood Products From the People's Republic of China: Final Scope Determination and Affirmative Final Determination of Circumvention of the Antidumping and Countervailing Duty Orders, 88 Fed. Reg. 46,740, 46,741 (Dep't of Commerce July 20, 2023) ("Final Circ. Determination"), and accompanying Issues and Dec. Mem. at 10-14 ("Final Circ. I&D Mem."). Commerce ultimately found that products produced under all five of the production scenarios circumvented the AD and CVD orders on hardwood plywood from China. See Final Circ. Determination, 88 Fed. Reg. at 46,741. Commerce also continued to rely on AFA to determine that 37 companies, including both Groll Ply and Win Faith, produced hardwood plywood under all five production scenarios. See id. at

5

46,740; see also id. at 46,743, App. V (providing the list of companies that Commerce determined failed to cooperate).[1]

16.     Finally, Commerce maintained the certification regime that it established in its preliminary circumvention determination including prohibiting the blacklist companies from participating in the certification regime to show that their merchandise is not subject to AD/CVD duties.  See id.; see also Certain Hardwood Plywood Products From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determinations of No Shipments, and Partial Rescission; 2021-2022, 89 Fed. Reg. 66,346 (Dep't of Commerce Aug. 15, 2024) ("Prelim. Results"), accompanying and Dec. Mem. at 20-21 ("Prelim. Dec. Mem."). Because of Commerce's affirmative circumvention determination depriving Groll Ply and Win Faith of the ability to file certifications, Groll's and Win Faith's hardwood plywood from Vietnam is subject to the AD and CVD orders on hardwood plywood from China regardless of whether the hardwood plywood falls under one of the five production scenarios subject to Commerce's affirmative circumvention determination.  See Prelim. Circ. Dec. Mem. at 13 (noting that Commerce instructed U.S. Customs and Border Protection ("CBP") to suspend the entry and collect cash deposits for entries of merchandise produced and/or exported by these non-cooperative companies at the AD rate established for the China-wide entity (183.36 percent) and the CVD rate established for all other Chinese producers and/or exporters (22.98 percent), unless the blacklist company has its own company specific rate).

17.     As part of this certification regime, Commerce imposed specific requirements on U.S. importers.  Namely, U.S. importers "must prepare and maintain . . . documentation to support

---

[1] Commerce removed certain companies from its blacklist while adding others.  See Final Circ. I&D Mem. at 103, 165-66.

the importer certification" as well as "maintain . . . relevant supporting documentation from the exporter of the hardwood plywood assembled in Vietnam that was not produced using any of the Chinese hardwood plywood input scenarios subject to {Commerce's affirmative circumvention finding}." Final Circ. Determination, 88 Fed. Reg. at 46,741. In other words, Commerce's certification itself places a burden on U.S. importers (and exporters) to maintain the necessary documentation to demonstrate that their merchandise is not subject to the AD/CVD orders on China.

18. To address procedural and equity concerns raised by various parties during Commerce's scope and circumvention inquiries, Commerce stated that it planned to expand the period of the administrative review subject to this appeal to include the earliest entry from Vietnam suspended as a result of the preliminary circumvention determination through December 31, 2022. See Final Cir. I&D Mem. at 180; Final Circ. Determination, 88 Fed. Reg. at 46,741. Commerce then decided to:

> 2. provide an opportunity for interested parties to request AD and/or CVD reviews of unliquidated/suspended entries of merchandise from Vietnam that entered during the expanded PORs (*i.e.*, before January 2022);
> 3. publish a supplementary notice of initiation for any additional requests for review received as a result of this final determination;
> 4. place CBP data on the record of the ongoing AD/CVD reviews for the expanded PORs and allow parties to comment; and
> 5. issue questionnaires to all parties under review in order to ascertain the quantity and value of their suspended entries of both subject and potentially non-subject hardwood plywood from Vietnam.

Final Circ. I&D Mem. at 181. Further, Commerce determined that any company ineligible for the certification regime could request an administrative review of their eligibility to participate in the certification regime through the then-ongoing administrative review (and the review subject to this appeal). See Final Circ. Determination, 88 Fed. Reg. at 46,741; see also Prelim. Dec. Mem. at 21.

19.     In January 2023, certain interested parties requested that Commerce conduct administrative reviews of the AD and CVD orders of hardwood plywood from China. See Prelim. Dec. Mem. at 2.

20.     On March 14, 2023, Commerce initiated the fifth administrative review that initially covered the period from January 1, 2022, through December 31, 2022. See id. In the review, Commerce stated that it would re-assess the eligibility of blacklist companies for the certification process. See id. at 10.

21.     During the course of the fifth review, and either prior to or shortly after Commerce reached its affirmative circumvention determination described above, between April 2023 and August 2023, Commerce received timely no shipment certifications and separate rate applications ("SRAs") from numerous Vietnamese respondents, including Groll Ply and Win Faith. Id. at 2; see also Final I&D Mem. at 12.

22.     Win Faith submitted a SRA and timely responded to Commerce's supplemental SRA questionnaire. See id. at 14, n. 49.

23.     Commerce expanded the POR to begin on September 26, 2021 "to capture the first entry suspended as a result of the circumvention determination" and allowed for "interested parties to request reviews of unliquidated/suspended entries of merchandise from Vietnam that entered from September 26, 2021, through December 31, 2021." Prelim. Dec. Mem. at 2-3. Commerce, however, received no additional requests for administrative reviews. See id. at 3.

24.     After placing CBP data on the record, Commerce released quantity and value ("Q&V") questionnaires to companies with suspended entries during the POR. See id. at 3. All the companies who received these Q&V questionnaires, including Groll Ply and Win Faith, responded that "their suspended entries consisted exclusively of non-subject merchandise." Id.;

8

see also id. at 10, n. 36 (noting that Groll Ply and Win Faith submitted Q&V questionnaire responses).

25. Between February and July 2024, Commerce issued certification eligibility questionnaires and supplemental certification eligibility questionnaires to the companies that responded to Commerce's Q&V questionnaires. See id. at 3-4. Win Faith responded to the certification eligibility questionnaire. See id. at 10. Commerce issued two supplemental certification eligibility questionnaires to Win Faith. See id. at 10-11. Win Faith responded to the first questionnaire. See Final I&D Mem. at 3. It did not respond to the second of these supplemental questionnaires. See id.

26. Pursuant to the requirements of the certification regime, Northwest Hardwoods maintained information demonstrating that its imports did not consist of any of the Chinese hardwood plywood input scenarios subject to Commerce's affirmative circumvention finding. See generally id. at 20. On April 18, 2024, Northwest Hardwoods submitted examples of such information on the record in the fifth review, including independent audit reports, and indicated that it could similarly provide such information to CBP on request to support its certifications that its imports of hardwood plywood are not subject to AD/CVD duties. See id. These records showed that the plywood manufactured in Vietnam and exported by Win Faith did not contain plywood manufactured under any of the five scenarios found by Commerce to be circumventing the AD/CVD orders on China.

27. On August 15, 2024, the Preliminary Results of the fifth administrative AD review were published in the Federal Register. See Prelim. Results, 89 Fed. Reg. at 66,346. Commerce preliminarily found that Win Faith exported hardwood plywood to the United States during the POR, but that Win Faith did not sell or export merchandise subject to the AD order on hardwood

plywood to the United States during the POR; meaning it did not export circumventing merchandise. See Prelim. Dec. Mem. at 12, 21, Appendix II. Commerce also stated that, to the extent its Preliminary Results remained unchanged in the Final Results, Commerce intended to allow Win Faith to participate in the certification program in the future. See id.; see also id. at 21, n.110. Commerce, however, stated that it would continue to evaluate the certification eligibility questionnaire responses that it received, and that it intended to issue supplemental questionnaires relating to these responses. See id. at 10-11.

28. In the Preliminary Results in the fifth review, Commerce found that the respondents' responses to the certification eligibility questionnaire and supplemental questionnaires, including Win Faith, included "source documentation supporting the country of origin of the core veneer inputs used to produce the companies' exported hardwood plywood." Id. at 10. Further, Commerce recognized:

> each . . . respondent{} reported that it had the ability to track the wood inputs used to the produce its merchandise because it received documentation from its suppliers of individual core veneers (and/or, where applicable, its suppliers of finished or semi-finished plywood) demonstrating the non-China origin of the logs from which these inputs were produced.

Id. at 11-12. Commerce acknowledged that the respondents, including Win Faith, submitted documentation to support this claim such as:

> (1) Delivery Notes or Stock-In vouchers;
> (2) Value Added Tax invoices;
> (3) Lists of Forestry Products (attesting to the source of the logs used to produce the purchased core veneers);
> (4) {S}amples of principal contracts between the core veneer suppliers and the respondent; and
> (5) {T}he core veneer supplier's wood origin documents (including the contract between each core veneer supplier and wood farmer, the identification documents of the wood farmer, and land use right certificates owned by the wood farmer).

Id. at 12.  Commerce preliminarily concluded that the "the List of Forest Products is particularly probative," in determining whether a company could trace the origin because these documents include "information about the forest owner who supplied the logs used in the production of the hardwood plywood, the address of the forest, the species of the wood veneer supplied, and the quantity and size of those veneers."  Id.; see also id. at 12, n. 52 (citing to Win Faith as an example of Vietnamese respondent submitting such forestry documentation).  In sum, Commerce preliminarily found that Win Faith, along with other Vietnamese respondents, submitted documentation establishing that they can trace the origin of the inputs that they used to produce hardwood plywood.

29.    Commerce preliminarily applied AFA against Groll Ply because it did not respond to Commerce's certification eligibility questionnaire.  See id. at 14.  Based on AFA, Commerce found that Groll Ply did not support its claim that it had no shipments of subject merchandise and determined that Groll Ply remained prohibited from participating in the certification regime.  See id. at 14, 21.  Commerce, however, determined that Groll Ply sufficiently demonstrated that it was entitled to a separate rate and assigned Groll Ply a dumping margin based on AFA of 89.10 percent.  See id. at 16, 19-20; see also Prelim. Results, 89 Fed. Reg. at 66,348.

30.    Following the Preliminary Results, Commerce issued an additional certification eligibility questionnaire to Win Faith.  See Final I&D Mem. at 2, n. 5.  Win Faith did not respond to Commerce's final questionnaire and informed the agency that it did not intend to participate in verification.  See id. at 3, n.8.

31.    Northwest Hardwoods submitted case and rebuttal briefs for Commerce's consideration prior to issuing the Final Results.  See id. at 3, n. 10, 11 (noting that U.S. Importers submitted case and rebuttal briefs).  In these briefs, Northwest Hardwoods demonstrated that it

was improper for Commerce to apply AFA against Win Faith and, consequently, Commerce should not prohibit Win Faith from participating in the certification regime.  See id. at 27.  Northwest Hardwoods explained that, although Win Faith did not respond to Commerce's final certification eligibility questionnaire or participate in verification, Win Faith otherwise submitted sufficient information to establish that it was able to trace the origin of the inputs used in the hardwood plywood that it exported to the United States, that it did not export circumventing merchandise to the United States and Commerce's final supplemental questionnaire did not contain questions pertaining to this information.  See id.

32.    Further, Northwest Hardwoods showed that, to the extent that Commerce applied AFA against Win Faith, Commerce should nevertheless find that Win Faith is eligible for a separate rate and assign it the same dumping margin assigned to the other non-cooperating respondents.  See id.

33.    Finally, Northwest Hardwoods argued in its case and rebuttal briefs that Commerce should expressly permit U.S. importers to submit information to CBP demonstrating that their imports from Groll Ply and Win Faith are not subject to AD/CVD duties regardless of whether Commerce continues to find Groll Ply and Win Faith are prohibited from participating in the certification regime.  See id. at 18.  Northwest Hardwoods demonstrated that such an instruction would be consistent with Commerce's certification regime, which required that U.S. importers maintain documentation to support their certifications; other past instances where Commerce's rules set forth certification requirements; CBP's own inherent authority to collect information from U.S. importers and congressional intent.  See id.; see also H.R. Rep. No. 118-582, at 12 (2024) (calling on Commerce to "consider and accept documentation provided by U.S. importers that potentially would justify including them within the hardwood plywood certification regime").

34. On May 19, 2025, the Final Results were published in the Federal Register. See Final Results, 90 Fed. Reg. at 21,271. In the Final Results, Commerce reversed its preliminary finding to allow Win Faith to participate in the certification regime and applied AFA against Win Faith. See Final I&D Mem. at 7, see also id. at 29-31. Commerce found that a gap existed on the record because Win Faith did not submit a response to Commerce's second certification eligibility questionnaire and declined verification. See id. at 7; see also id. at 29-31. Commerce noted that Win Faith self-selected the wood-origin documents that it submitted in its questionnaire responses and Commerce could not examine any other documentation because Win Faith refused verification. See id. at 30-31. Based on AFA, Commerce determined that certain of Win Faith's entries of hardwood plywood during the POR were subject to the AD/CVD orders on hardwood plywood. See id. at 28. Commerce, however, found that it had sufficiently verified that two of Win Faith's suppliers "did not sell or ship hardwood plywood to the United States made from Chinese core veneers during the POR." Id. at 32. Commerce, therefore, decided to liquidate "these sales without regard to AD/CVD duties because {Commerce} confirmed that they are not subject to the {AD/CVD orders on hardwood plywood from China}. Id. at 32.

35. As Commerce reversed its preliminary finding that Win Faith had no shipments during the POR for the first time in the Final Results, Commerce had to consider whether to grant Win Faith a separate rate. Commerce did not grant Win Faith a separate rate reasoning that Win Faith was ultimately controlled by the Government of China ("GOC"). See id. at 12. Commerce concluded that the GOC maintained de facto control over Win Fath Faith because "the GOC indirectly holds majority ownership shares of Win Faith, and one of Win Faith's directors is also the director at another state-owned entity." Id. at 14; see also id. at 32-33. As a result of its finding that Win Faith was not entitled to a separate rate, Commerce assigned Win Faith the China-wide

13

entity's AD cash deposit rate of 114.72 percent (except with respect to two suppliers). See id. at 14.

36. Further, Commerce assigned AFA against Groll Ply and continued to assign it a separate rate of 89.10 percent. See id. at 7-8; see also Final Results, 90 Fed. Reg. at 21,273.

37. Finally, Commerce declined to issue instructions to CBP to allow for U.S. importers to independently submit information to CBP that their imported hardwood plywood from Groll Ply and/or Win Faith was not produced under any of the five production scenarios found to be circumventing the AD/CVD orders on hardwood plywood from China. See Final I&D Mem. at 18; see also id. at 32-33. Commerce reasoned that importers do not have "direct personal knowledge" regarding the facts of the production process of their imported hardwood plywood. See id. at 19. Commerce stated that allowing U.S. importers to submit information to CBP would create loopholes in the certification regime and undermine its AFA findings. See id.

## VI.   STATEMENT OF THE CLAIMS

### COUNT I

38. Northwest Hardwoods incorporates herein by reference paragraphs 1-37 of this complaint.

39. Commerce's application of AFA against Win Faith and decision not to allow Win Faith to participate in the certification regime for its exports was not supported by substantial evidence and was otherwise not in accordance with law because Commerce unreasonably found that there was a gap in the record pertaining to Win Faith's ability to trace the origin of the inputs in the hardwood plywood that it exports to the United States. Specifically, Commerce unlawfully applied AFA against Win Faith because it disregarded the fact that Win Faith submitted a substantial amount of information to Commerce establishing its ability to trace the origin of the

inputs used to the produce hardwood plywood that it exported to the United States. Further, Commerce unlawfully applied AFA against Win Faith because U.S. importers submitted information that can otherwise fill any alleged gap on the record and corroborate the information submitted by Win Faith that was not verified by Commerce.

## COUNT II

40. Northwest Hardwoods incorporates herein by reference paragraphs 1-39 of this complaint.

41. Commerce's determination that Win Faith was not entitled to a separate rate was not supported by substantial evidence and otherwise not in accordance with law because the only reasonable reading of the record was that Win Faith was neither <u>de facto</u> nor <u>de jure</u> controlled by the GOC.

## COUNT III

42. Northwest Hardwoods incorporates herein by reference paragraphs 1-41 of this complaint.

43. Commerce's failure to instruct CBP to allow for U.S. importers, such as Northwest Hardwoods, to submit documentation demonstrating that merchandise exported by Groll Ply and Win Faith was not subject to the AD/CVD orders on hardwood plywood from China was not supported by substantial evidence and was otherwise not in accordance with law. Commerce's cash deposit and liquidation instructions that do not allow companies such as Groll Ply and Win Faith to participate in the certification regime conflict with Commerce's requirements that U.S. importers must maintain documentation to support their certifications and undermine CBP's own inherent authority to collect information from U.S. importers. Further, Commerce acted arbitrarily and capriciously by not providing a reasonable explanation for treating this certification regime

differently than other certification requirements where Commerce allows U.S. importers to submit information to CBP and its determination not to allow importers to prove that the merchandise was not circumventing the AD/CVD orders on China was unsupported by substantial evidence and otherwise not in accordance with law.

## VII.   DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, Northwest Hardwoods respectfully prays that this Court:

(1) find that Commerce's actions as described in Counts I to III are not supported by substantial evidence and otherwise not in accordance with law;

(2) find that Groll Ply and Win Faith are eligible to provide certifications showing that their merchandise was not produced under one of the five circumventing scenarios and, therefore, not subject to AD/CVD orders on hardwood plywood from China;

(3) order Commerce to permit importers to nevertheless prove that the merchandise was not circumventing through instructions to CBP or otherwise;

(4) find that Win Faith is entitled to a separate rate;

(5) order Commerce to publish amended Final Results in the Federal Register in accordance with a final decision by this Court in this matter;

(6) order Commerce to issue cash deposit liquidation instructions to CBP consistent with this Court's decision; and

(7) provide such other relief as this honorable Court deems proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Jeffrey S. Grimson |
|  | Jeffrey S. Grimson |
|  | Jill A. Cramer |
|  | Bryan P. Cenko |
|  | Mowry & Grimson, PLLC |
|  | 5335 Wisconsin Avenue, Suite 810 |
|  | Washington, DC 20015 |
|  | 202-688-3610 |
|  | trade@mowrygrimson.com |
| Date: July 18, 2025 | *Counsel to Northwest Hardwoods, Inc.* |